v. Alstom Thank you again, Mr. Rainey. Good morning, Your Honors, and may it please the Court, Richard Rainey on behalf of Alstom Grid. We've challenged a number of rulings below. I'd like to begin with the issue of infringement. Alstom does not infringe the matter of law for two reasons. First, the accused system does not meet the comparison limitation, and second, the accused software does not meet the adding and deselecting from the existing subset limitation. Is your comparison argument mainly that Dr. Brown admitted that there is no comparison made of the measured voltage in the target voltage band and, absent that, there's no other evidence of literal infringement and this is not a DOE case? That is 100% correct, Your Honor. Total failure of proof in this case. And, in fact, I would argue, Your Honor, that the issue here really is an effort to try and sort of compare apples and oranges, and this applies both to the comparing limitation as well as to the selecting and deselecting limitations. We have a model-based system. It's undisputed. That system generates an energy delivery parameter based on calculated voltage. That's undisputed. It's admitted. They have a constant monitoring system which needs a panel of meters sending voltages and constantly detecting whether those voltages are within or without the target voltage range in order to know whether they can issue an energy delivery parameter. We don't have a subset to which we add or deselect anything from. That's not how our software works. That's undisputed. They need to add and deselect from their panel in order for their system to function. Dr. Brown explained that sometimes the meters in the bellwether subset remain the same. He explained when a meter reports voltage violation, that meter is added to the subset and one is deselected. Why isn't that substantial evidence? Just like you seem like you're on strong footing on the comparison limitation, you seem like you're on weak footing here because Dr. Brown didn't contradict himself here. Actually, I think you need to look a little bit behind what Dr. Brown said here and look at how our system operates, which again is undisputed. He's pointing to a... You want me to look beyond what the witness who is deemed an expert and gave testimony to the jury on a substantial evidence standard of review and you didn't object to either his methodology or his credentials. You want me to disregard his testimony in entirety and look behind it? No, I'm not asking you to do that at all. This court's made clear, however, a conclusory expert testimony is not the kind of substantial evidence that the court will use to sustain a verdict, one. Two, what he's talking about is adding to something that is not the claimed subset. That's the key point I wanted to make here. If you look at how this claim functions, it's pretty clear. You receive measurement data, that's the voltage information from the meters, from each sensor of a subset. It's at the receipt of the voltage information from meters that you first have a claimed subset. Second, you have to generate an energy delivery parameter based on measurement data received from the subset. So what we're talking about is the subset of meters. If you're going to look at our system and say that's a subset, there's a subset there. The only time there is ever a group of meters that reports voltage data and it doesn't report it into the objective function where we calculate the energy delivery parameter, it reports it into the adjustment algorithm. But if you look at that and want to call that a subset, the only time that happens ever in our software, and this is undisputed, is at the end of the two-minute wait period. Now, if I agree with you on the comparison limitation, I don't have to reach this, right? No, you do not. So why don't we talk about the only thing that's causing me pause on the comparison limitation, which is the heuristic mode or model, whatever you call it. In a footnote in your opening brief, you say, and don't pay any attention to that heuristic thing to the extent that they bring it up later because they waived it in closing argument. I don't really know what to make of that because there are certain pages in the testimony and the exhibits. If I read that manual right, it says expressly there's a comparison going on, the exact comparison at issue in that heuristic mode. And you want me to disregard that as couldn't be the substantial evidence the jury made its decision on because they gave it up, the argument? That's correct. Our position is Were there other limitations? Because I understand that they were relying on the two different modes, the heuristic mode being one of them. Were there other limitations in the claim that you argued that the heuristic mode didn't satisfy? Well, adding and deselecting as well. But yes, I mean, I think, first of all, the operation of the system is undisputed under any of the modes, and it doesn't meet the comparison or the adding and deselecting Why doesn't the description at page appendix 14636, which is the user's manual description of the LTC regulator control function, why doesn't that talk about the comparison step? I'm just pulling that up, Your Honor. Okay, sure. And I'm sorry, where are you focusing on 14636? On page 14636 at the bottom, it talks about if the measured voltages, look at number one, it says if all measured voltages on feeders downstream of the LTC or regulator are below the voltage high limit and are higher than the lower voltage limit, then do something. And why isn't that a comparison of a zone, a target zone? Well, again, there may be comparisons done in the meters, but we're talking about comparisons of voltage done to generate an energy delivery parameter. Now, experts admitted measured voltage data is never used to generate an energy delivery parameter. So there may be comparisons of voltage done, for example, out at the meters to see whether the meter is an exception state, but that's not the comparison of data that we're talking about in the claims. Moreover, they don't raise any of this heuristic information in their and we shouldn't be talking about it here on appeal for the first time. You had mentioned Dr. Brown's admission. Do you have the site for that handy, the appendix site? For Dr. Brown's admissions? Yes. Where his admission that at least the other mode didn't provide the comparison step? I'd have to look for that, Your Honor. Okay. I don't have that. The third issue I wanted to address is the marking issue. Now, I don't want you to go on. This is the only thing that I'm struggling with, and I don't fully understand it. So you need to spend more time on it because this is where you're going to win or lose your case. On the heuristic? Yeah. And on the comparison. And the portion of the manual that Judge Stoll just pointed you to, is this limited to the heuristic mode, this portion of this manual? Because I'm not sure I understand your argument that this isn't the relevant comparison for the claims. So is this also within the umbrella of the heuristic mode and therefore I should disregard it? Yes. This is limited to heuristic. How do I know that? I'd have to pull that for you, Your Honor. They do not raise this heuristic issue I would submit in their briefing. This issue was dropped below. I think they do raise it in their briefing. Do you think it's part of the heuristic because on page 14, 626, there's section 8.3 called heuristic LVM methodology, and this section that we're pointing to is 8.3 point something? Does that make sense to you? Yes, it does. But again, I think it's grossly unfair to say to a jury, this is a red herring, it's not an issue in this case, and then come up on appeal and say it is an issue in the case. I just think when you make those kind of concessions, that's the end of the issue for purposes of the trial. And that's the way we've addressed this appeal, is that that issue's out of the case. And I understand you to be also saying, if I understand correctly, that in addition, the comparison that we pointed to doesn't meet the claim limitation because it doesn't generate an energy parameter? Absolutely. And that's an argument that was presented? Yes. The issues were squarely presented. Dr. Brown's admissions that we rely on in this are not limited to one mode or the other. That's the way our system operates. It's undisputed. I had sensed the court did not want me to move on to the other issues in the case, and if that's so, I'm happy to sit down and let an opposing counsel talk. I mean, do you have any questions for him? I don't have any questions for you. If you want to talk on, you can. I don't want to waste anybody's time here. All right, good. Sit down. Come on up. Good morning. Let me start by going through what the evidence was with respect to the comparison that the Alstom system makes. And I would begin by drawing the court's attention to page 9965 of the appendix, where Mr. Powell reads a portion of the Alstom website that is describing this system. And what it says is...  I'm sorry, 9965, Your Honor. Line five. Line five. Actually, line three, the witness is saying this is a web page that I've reviewed. This is actually of Mr. Powell, the inventor. Question, what is it? Whose web page? Answer, Alstom's web page. And then he says he got it off the website. And then the lawyer asks him to read a portion of it to the jury. And on line 16, he says, this is coming from Alstom's website, Alstom's own description of its system. IVVC proactively queries for the near real-time voltage measurements from a small set of meters on each feeder to check that existing voltages are not too close to operational limits before issuing new controls. Then he says, that meant to me it was a bandwidth that they were checking against the measured voltages that they were getting through their system. Question, who? When you look at the actual source documents, the user manual, doesn't it say that what they're doing is they're comparing that measured voltage to a calculated voltage? It does not say that they're comparing the measured voltage to a range, a target voltage range. Your Honor, Dr. Brown testified on multiple examples that they are doing exactly that comparison. It's a multi-step comparison. There are three steps. I look at the manual and I look at Dr. Brown's testimony, which is kind of the same. I look at the manual and I see that there's a comparison to a measured voltage and then that differential between, I mean, comparison to a calculated voltage. The differential between the calculated and measured is then used to change the voltage target zone. But I don't see anywhere where there's any sort of disclosure or statement that the measured voltage is compared to the range target zone. I understand what you're saying. What Dr. Brown explained is it's a three-step process. When they focus you on that third step, what somebody said was an admission, he was agreeing that that third step cannot be viewed in isolation. You have to look at all three of them. While I'm not a math expert, I will represent you. I've worked this out several times in the course of looking at this appeal. Work it out for me right now. I don't want you to just refer to third step. I'm not following you. So please, baby steps, walk me through it. Okay. So their process expresses a mathematical equation, would be first you determine the error, calculation minus measurement. You add the limit. That equals your new adjusted limit. And then you compare that to see whether it's greater, equal, or less than the calculated voltage. So what you can do as a matter of algebra is you drop out that new limit part because it says equal. And so on the one hand, you have the error plus limit. And on the other hand, you have the question, is it greater than, less than, or equal? And then you drop calculation out of both sides and you discover what that equation is doing is solving for the relationship between the measurement and the original limit. And that's why Dr. Brown said this is mathematically the comparison that the claim calls for. So you said there's a third step. Where is the third step disclosed? Because I look at the discussion by Dr. Brown and I look at the source documents he's relying on and I see the step of doing the comparison between the measured and the calculated and I see the steps of adjusting the upper and lower limits. But then you said there was an extra step that you mentioned about then going back and doing some sort of other comparison. And I'm not seeing that. No, what I said was I was trying to simplify a little bit what I mean by the equation. But on page 38 of their brief, they say Dr. Brown accurately summarizes how the system works. We don't have a dispute. There are three steps. Determine the error, adjust the limit, compare the adjusted limit to the calculated. Where is the compare the adjusted limit to the calculated amount? Where is that? It's on page 38 of their brief. They cite appendix 10562. We're not disputing that that's how their system works. But that is mathematically a comparison of measurement to the original 114 to 126. You say it's mathematically. That's a very result-oriented approach that only applies in DOE, sir. This is a literal infringement case. It requires comparison of two discrete things. You're saying the three-step approach laid out by Dr. Brown mathematically gets him to the same exact result. I don't know that Mr. Rainey would necessarily agree or disagree, but let's say he agrees with you. That's still not literal infringement. That's possibly a great DOE argument, but this is not a DOE case. Dr. Brown said they don't compare the two things in the claims that need to be compared. That's the end of it for you. Unless I'm missing something. It is the same thing. It is the comparison. One of the things we said to the jury, which they've taken- Dr. Brown said they don't compare those two things, but you get the same result with their three-step process. That's like saying distributive addition is the same as multiplication. 3 plus 3 plus 3 plus 3 is 12, and 4 times 3 is 12. That doesn't mean addition and multiplication are the exact same function, even though they reach the same result. If you had a variable on one side and another variable on the other side, and you had two different ways of expressing the relationship, it's the same thing. It's the comparison. The claim doesn't say how to make the comparison. It just says make a comparison. You gave me a site to page A10652. I can't find that in the appendix. Did I misunderstand what the appropriate page was? I was actually citing you to their brief, which is 10562. This is on page 38 of their brief. I was just accepting that as a correct- 10562. Okay. Thank you. It's describing a three-step process that results in a comparison. That's what the claim requires, a comparison. It doesn't say how to do the comparison. This is not a term that was construed. They're trying to shoehorn this into a specific way that they think this comparison should be made. Dr. Brown repeatedly in his testimony said this comparison is made, and here's how it's made through this three-step process. You haven't said anything about the heuristic mode. Do you agree with the footnote in the blue brief that indicates that that issue was waived during the closing argument? No, Your Honor. We did not waive it. What I responded to- Why don't we turn to page 11306 of the appendix? Is it 11306? I think it's 11306. Your Honor, I remember what I said. You heard about heuristic. It's almost the first time- It's 11306. Yeah. I'm reading it. You heard about heuristic. It's almost the first time that you heard about it in the trial because what Duke is doing is optimizing. You heard a lot about optimizing, but you didn't hear about heuristic. That was simply a red herring. Really nothing at issue in this case. Yes, Your Honor, and the reason is because they didn't dispute. Because of the language that you pulled out of the manual, the heuristic infringes. But the evidence was that Duke wasn't using heuristic. So what they did in the closing was try to confuse the jury that the real issue was heuristic. What did he address this? In his blue brief, he didn't wait for the reply, so you had no chance. In his blue brief, he says expressly and unequivocally, you waived any claims to the heuristic model, your heuristic mode. He says it. You never address it in the red brief. It's like it wasn't said. I mean, didn't you therefore waive a claim that it wasn't given up by you below? You didn't address it. He says you waive it. There's some language in the closing which I could interpret as a waiver. I'm not sure how to interpret it. This case is quite confusing, but you simply didn't even respond to the argument in your red brief. And the reason, Your Honor, is because they were using optimizing. That's what the jury trial was about. So it doesn't matter whether you waived it or not. The point is, it doesn't matter at all because Duke didn't use it. And we're looking at Duke's system. That is the accused product. So we really shouldn't be looking at this, right? I didn't spend time in my brief on heuristic because I didn't believe it to be at issue in the trial. No, that's right. Wait. So are you saying that we couldn't support a finding of infringement on the heuristic method because that's not what Duke uses? There wasn't any evidence that they were using heuristic, Your Honor. That's right. It really isn't an issue. That's why I said it was a red herring. Right. But whether we talk about it or waive it or not, even if the heuristic method potentially could infringe, it doesn't support a verdict of infringement here. And you're waiving any argument that it does because that's not what Duke uses. I know you're afraid of the waiver argument, but you're saying the same thing. You're saying they don't use this method. Therefore, they can't infringe our patent under this method. They use another method. We have to show that that method infringes. Is that right? That is right. I don't accept that there was any waiver. Dr. Brown actually did testify on direct that the heuristic method waives. You're getting hung up on the waiver issue. Are you making any claim that Duke infringes based upon the heuristic method as opposed to the other method? No, sir. Because there was no evidence that they used heuristic. So we don't have to look at whether heuristic infringes or not. Correct. That's correct. Okay. So the evidence with respect to comparison is not simply Dr. Brown's testimony. It's, as I was saying, their own website, which says we make this comparison, which was read into the record, which the jury heard at 9965. Mr. Boardman had a meeting with Mr. Powell shortly after they saw that language. The 9965, are you talking about your inventor's website? He read their website to the jury. Okay. I don't see anything on 9965, which is where he just pointed me, where he's reading their website, which supposedly admits that the comparison is done. I don't see that at 9965. Am I missing it? So your honor, line 16, his reading, that is what the website says. IVVC, which is the system at issue here, proactively queries for the near real-time voltage measurements from a small set of meters on each feeder to check that existing voltages are not close to operational limits. The check is, I'm looking at a measurement. Your view is because it says operational limits, it must be that's this, 114 at the low end. There's no dispute about that in the record, 114 at the low end, 126 at the high end. Then he's asked again, who's doing this? Alston was using a bandwidth to check smart meters, another component of what's in it. And then he goes on, on the next page, 9966, to say these inform the measurements, the brownout alarms, the IVVC function when meter locations are approaching a low voltage limit and provides a warning, no further voltage reduction. On 9968. It was because the website has that language about operational limits, that that should be more something that we rely on, notwithstanding the fact that when we look at the user's manual and we look at Dr. Brown's testimony about exact operation, it talks about comparing a measured voltage to a calculated voltage. Well, your honor, I'm saying there is substantial evidence that the jury heard, this is only one piece of it, as a result of which it made the conclusion, it came to the conclusion that there was a comparison. And we're here to see whether there was enough evidence for a reasonable juror to make that conclusion. And so when their website says we make this check, and on 9968 when they have a meeting and Mr. Boardman says, yeah, we don't rely on calculated, we rely on measured, why is that? Because that's what their algorithm does. It compares, they have other steps, I'm not disputing that. Their algorithm compares the measurement to the limit, to the, not the adjusted limit, the 114, 126, which is what all of our electrical appliances operate on. So there's testimony from Mr. Boardman twice in this record, yeah, we disregard the calculated voltage, we rely only on the measurement. And why is that? Because when you look at the algorithm, you can see calculated voltage doesn't matter, it falls out, it's irrelevant. And why do they do that? They do that because that same document you're talking about says calculated is almost wrong. Why would we rely on that when we have a measurement that's going to be right? That's how their system works. Okay, your time is up. Mr. Rainey, you have a little bit of rebuttal time. Actually, you have a lot of rebuttal time. Unless the court has any further questions, I'm prepared to... I want you to address the website. The testimony of the inventor reading the website. The website doesn't say anything other than they've been saying all along, which is, first of all, there's two different issues with respect to the target voltage. There's meters reporting exceptions. So the meters will say, hey, I'm outside of range, I'm inside of range. Totally not an issue in this case. In this case, these claims are clearly talking about comparing a voltage, measured voltage to the target voltage range to generate an energy delivery parameter in the controller that's doing that. I'm talking about what's happening out at the meters. That's point one. Point two, there's no question that our system had the capability, it doesn't now, it's been stripped out of the product, but had the capability to use measured voltages. It runs through a series of computations to use that voltage, which is undisputed. There's no dispute about how our software operates. The website doesn't create a dispute about that. It doesn't get into the details about how anything is done. To us, how things happen are precisely what patent claims are all about. It's what this patent claims about. Okay, thank you counsel for the argument. The case is taken under submission. Thank you very much, your honor.